UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
VINCENT GEORGE JR. and WILLIAM PARKER,

                Plaintiffs,                12-cv-6365 (PKC)

-against-

C.O. BENBOW, Shield # 7002, C.O. PHILLIPS,
Shield # 7620, C.O. YOUSUF, Shield # 18907,
C.O. HAMER, Shield # 18457, C.O.
FLEURIMAND, Shield # 8299, CAPTAIN
MASSEY, Shield # 126, CAPTAIN HARVEY, #
1109, and CAPTAIN PENDEGRESS, Shield # 68,

                Defendants.
-----------------------------------------------------------x
-----------------------------------------------------------x
JOSE ZABALL,

                Plaintiff,                13-cv-3511 (PKC)

-against-

C.O. BENBOW, Shield # 7002, C.O. PHILLIPS,
Shield # 7620, C.O. YOUSUF, Shield # 18907,
C.O. HAMER, Shield # 18457, C.O.
FLEURIMAND, Shield # 8299, CAPTAIN
MASSEY, Shield # 126, CAPTAIN HARVEY, #
1109, and CAPTAIN PENDEGRESS, Shield # 68,

                Defendants.
-----------------------------------------------------------x
-----------------------------------------------------------x
KYLE ROBINSON,

                Plaintiff,                13-cv-3514 (PKC)

-against-                              MEMORANDUM
                                                    AND ORDER

C.O. BENBOW, Shield # 7002, C.O. PHILLIPS,
Shield # 7620, C.O. YOUSUF, Shield # 18907,
C.O. HAMER, Shield # 18457, C.O.
FLEURIMAND, Shield # 8299, CAPTAIN
MASSEY, Shield # 126, CAPTAIN HARVEY, #
1109, and CAPTAIN PENDEGRESS, Shield # 68,

                Defendants.
-----------------------------------------------------------x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 10-6-14

mailed to plaintiffs 10/6/14

CASTEL, District Judge:

In these three actions, plaintiffs, who represent themselves pro se, assert that their constitutional rights were violated when the defendants "forced" them and "other workers" in a mess hall "to strip down to nothing in front of each other and new trainees without dividers . . . ." (Robinson Am. Compl. ¶ II.D; Zaball Am. Compl. ¶ II.D; see also George Am. Compl. ¶ II.D.) Construing the claims and evidence in plaintiffs' favor as pro se parties, they appear to allege, pursuant to 42 U.S.C. § 1983, that defendants violated the Eighth Amendment's prohibition against cruel and unusual punishment and the Fourth Amendment's prohibition against unlawful search and seizure.

Defendants have moved for summary judgment, arguing, inter alia, that plaintiffs' failure to exhaust the applicable internal prison grievance procedure bars their suit under the Prison Litigation Reform Act of 1995 ("PLRA"). (Dkt. No. 94.)[1] Plaintiffs have filed no submissions in opposition. For the reasons explained, the defendants' summary judgment motion is granted.

BACKGROUND

On August 2, 2012, several corrections officers conducted a search of the mess hall at the George R. Vierno Center ("GRVC") at Rikers Island. (Def. 56.1 ¶ 1.) It was an "institutional search" directed toward locating contraband in a specific area of the prison. (Def. 56.1 ¶ 2.) Contraband materials include narcotics and weapons. (Def. 56.1 ¶ 4; Massey Dec. ¶ 6.)

---

[1] The docket citations here refer to the docket for 12 Civ. 6365, which includes all relevant submissions associated with the other two docket numbers listed in the caption, or substantially identical versions of those submissions.

As part of the search, "all of the inmates working in the mess hall were strip searched by male Correction Officers." (Def. 56.1 ¶ 6.) According to defendants, upon information and belief, plaintiffs were assigned to work in the mess hall on August 2. (Def. 56.1 ¶ 7.) Defendants assert that the strip search was necessary to the legitimate penological purposes of locating contraband and deterring inmates from possessing or exchanging contraband. (Def. 56.1 ¶ 8; Massey Dec. ¶¶ 5, 8.)

On or about August 2, 2012, plaintiff Jose Zaball filed a grievance about the search to the facility's grievance resolution program. (Def. 56.1 ¶ 9.) On August 15, 2012, the Inmate Grievance Resolution Committee (the "IGRC") rejected Zaball's grievance, and stated that the Department of Correction had "an obligation to keep contraband out of its jails." (Def. 56.1 ¶ 10.) Plaintiff was informed that he was entitled to a hearing by the IGRC, but he did not thereafter request one. (Def. 56.1 ¶¶ 11–12.) He also did not request review of his grievance from the facility's commanding officer. (Def. 56.1 ¶ 19.) A second inmate who was searched on August 2, Marvin Sanders, also filed a grievance concerning the incident, but also did not appeal the IGRC's initial rejection of his grievance. (Def. 56.1 ¶¶ 13–16.) No other inmates filed grievances concerning the August 2 search of the mess hall. (Def. 56.1 ¶ 17.)

PROCEDURAL HISTORY[2]

On August 20, 2012, twelve inmates, including the four remaining plaintiffs in these actions, filed a single complaint against various defendants, including several unidentified corrections officers who worked in the mess hall at the GRVC. Magistrate Judge James L. Cott dismissed without prejudice the claims of five of the inmates for failure either to pay filing fees

---

[2] This Court's order of November 6, 2013 (Dkt. No. 88) gives a more detailed account of the somewhat convoluted procedural history of these cases.

or to file proper applications to proceed in forma pauperis.  On December 21, 2012, this Court ordered the New York City Corporation Counsel to provide the names and service addresses of those corrections officers, and required the plaintiffs to file an amended complaint once that information was disclosed.  (Dkt. No. 43.)  Instead of filing one amended complaint, however, plaintiffs filed three, (Dkt. Nos. 57, 60, 61), and Magistrate Judge Cott severed the claims into three separate actions.  (Dkt. No. 64.)

On November 6, 2013, this Court dismissed the claims of three of the seven remaining plaintiffs for failure to prosecute, and the claims against all defendants except the corrections officers.  (Dkt. No. 88.)  It found, however, that the complaints, given the liberal construction afforded pro se pleadings, adequately stated a claim against the corrections officers based on a violation of the Fourth Amendment's prohibition against unreasonable searches and seizures.

Defendants moved for summary judgment in all three actions on April 25, 2014.  This Court ordered plaintiffs to respond to the motions for summary judgment by August 8, 2014.  (Dkt. No. 102.)  Because plaintiffs did not do so, this Court will adjudicate the motions on the existing record.

SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law . . . ."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material

element of his claim or defense, demonstrating that he is entitled to relief.  The evidence on each material element must be sufficient to entitle the movant to relief in its favor as a matter of law.  Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Jaramillo v. Weyerhaeuser Co., 536 F.3d 140, 145 (2d Cir.2008).

        Plaintiffs' failure to oppose defendants' motion, however, does not relieve the Court of its obligation to establish that the available evidence does in fact warrant a grant of summary judgment.  "Before summary judgment may be entered, the district court must ensure that each statement of material fact is supported by record evidence sufficient to satisfy the movant's burden of production even if the statement is unopposed." Jackson v. Fed. Express, __ F.3d __, No. 12-1475-cv, 2014 WL 4412333, at *3 (2d Cir. Sept. 9, 2014).  Additionally, "the court must determine whether the legal theory of the motion is sound." Id.

DISCUSSION

        The PLRA provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42. U.S.C. § 1997e(a).  This exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).  Furthermore, "[s]ection 1997e(a) requires 'proper exhaustion'—that is, 'using all steps that the

agency holds out, and doing so properly.'"  Amador v. Andrews, 655 F.3d 89, 96 (2d Cir. 2011) (quoting Woodford v. Ngo, 548 U.S. 81, 90 (2006)).

Because the GRVC is a facility of the New York City Department of Correction ("DOC"), defendants argue that plaintiffs' failure to exhaust their remedies under the DOC's Inmate Grievance Resolution Program ("IGRP") bars their lawsuit.[3]  The version of the IGRP in effect in August 2012 establishes a grievance procedure with five levels of review: (1) informal resolution by the IGRC, (2) a formal hearing before the IGRC, (3) an appeal to the Commanding Officer, (4) an appeal to the Central Office Review Committee, and (5) an appeal to the New York City Board of Correction.  See DOC Directive 3375R-A, available at http://www.nyc.gov/ html/doc/downloads/pdf/3375R-A.pdf.[4]  At each stage of the review process, an inmate has five days to challenge an unfavorable disposition.  Id.

None of the four plaintiffs have exhausted their remedies under the IGRC.  The record indicates that plaintiffs George, Parker and Robinson did not file a grievance at all. (Passeser Decl. Ex. D.)  Zaball did file a grievance, but, defendants assert, he did not challenge the IGRC's unfavorable informal resolution of the grievance.  (Def. 56.1 ¶ 12.)  While this is not completely clear from the face of the documents submitted by defendants, it is corroborated by the fact that only five days passed between the IGRC's informal resolution proposal and the filing of this action.  It is implausible that Zaball exhausted the four remaining levels of review established by the IGRC in so short a time.

---

[3] The Court takes judicial notice of IGRP.  See Myers v. City of New York, 11 Civ. 8525 (PAE), 2012 WL 3776707, at *4 n.6 (S.D.N.Y. Aug. 29, 2012) (collecting cases).
[4] See Espinal v. Goord, 558 F.3d 119, 125 (2d Cir. 2009) (noting that the regulations relevant to the PLRA's exhaustion requirement are those in effect at the time the inmate filed the grievances at issue).  Directive 3375R-A has since been superseded by Directive 3376, which eliminates the last level of review.

The Second Circuit has held, however, that an inmate's failure to exhaust administrative remedies may sometimes be excused. Hemphill v. New York, 380 F.3d 680, 686 (2d Cir. 2004). This is the case if the administrative remedies were not in fact "available" to the prisoner, if defendants fail to raise failure to exhaust as a defense or are estopped from raising it due to due to their own actions preventing the prisoner from availing himself of those remedies, or in the presence of other "special circumstances." Id.

There is some doubt as to the continued viability of the Hemphill framework. See Amador, 655 F.3d at 102 (noting that Hemphill is in tension with the Supreme Court's later holding in Woodford that the PLRA requires "proper exhaustion"). Even under Hemphill, however, nothing in the record suggests that plaintiffs' failure to exhaust should be excused here. The grievances filed by Zaball and Sanders show that the grievance procedure was actually available to inmates at the GRVC. Furthermore, there is no indication that defendants prevented plaintiffs from availing themselves of the IGRP. In fact, the form conveying to Zaball the IGRC's proposed informal resolution of his grievance, which Zaball signed, also informed him that if his grievance remained unresolved, he was entitled to a formal hearing by the IGRC. (Passeser Decl. Ex. D.) Finally, the record contains no suggestion of other "special circumstances" that could excuse plaintiffs' failure to exhaust.

CONCLUSION

Defendants have met their burden of showing that no genuine dispute exists as to plaintiffs' failure to exhaust their remedies under the IGRP, and plaintiffs have not submitted any countervailing evidence. Thus, plaintiffs' claims are barred by the PLRA's exhaustion requirement. I need not reach defendants' further arguments that the strip searches were

reasonable or that defendants are entitled to qualified immunity. Defendants' motion for summary judgment is GRANTED. The Clerk shall enter judgment for the defendants.

Counsel for defendants shall provide plaintiffs with copies of all unreported decisions cited herein.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore in forma pauperis status is denied for the purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
October 3, 2014